## GUGERT v. NEW ORLEANS INDEPENDENT LAUNDRIES, Inc.*
### No. 16938.

Court of Appeal of Louisiana. Orleans.

May 30, 1938.

James G. Schillin, of New Orleans, for appellant.

Leo R. Wertheimer, of New Orleans, for appellee.

McCALEB, Judge.

The plaintiff, Theodore A. Gugert, brought this suit against New Orleans Independent Laundries, Inc., to recover $119.-00, the alleged value of five sets of draperies. He charges, in substance, that, during the month of June 1937, he delivered to the defendant eight sets of hand blocked linen draperies, lined with sateen, for the purpose of having them cleaned; that, when they were returned by the defendant in November 1937, he discovered that five of the sets had been so badly torn and otherwise damaged as to be unfit for use; that the curtains had been delivered to the defendant in good condition and that the damage thereto was caused by its negligence. By supplemental petition, he increased his demand, asserting, as an additional item of damage, that he was entitled to $180.00 for the loss of use of the draperies during the 1937–1938 season and for the humiliation and embarrassment sustained by him as a consequence of being deprived of them through the defendant's fault.

In due course, the defendant answered and admitted that it had undertaken to clean the draperies and that they had been torn while in its custody. It resisted liability, however, on the ground that it had dry-cleaned the curtains in the usual manner and by the most modern process known to the industry; that the cause of the damage was due to the weakened condition of the fibers of the material which had become deteriorated through age, use and the prevailing damp climate of New Orleans; that, at the time the draperies were accepted from the plaintiff, this inherent weakness of the material was not apparent and that it was free from negligence in the premises.

After a trial on the foregoing issues, the court below found for the defendant and

dismissed the plaintiff's suit. He has appealed from the adverse judgment.

■ Since the defendant admits that the draperies were damaged while in its custody, the burden of proof was upon it to show that it was free from fault. The question, therefore, is whether the evidence submitted by it is sufficient to sustain the finding of the trial judge.

Mrs. Gugert, the plaintiff's wife, testified in substance that, during the month of June 1937, she delivered the draperies to defendant's driver, one Roy Barbieries, for the purpose of having them cleaned and placed in storage for the summer months and that the draperies (although having been in use for a period of 7 years) were in good condition. Upon her return to New Orleans in October from a summer vacation, she telephoned the defendant's establishment and requested that the draperies be returned to her. After some delay, one Weiser, defendant's superintendent, delivered them to her home and received the sum of $5.50 in payment of the services rendered by defendant. Plaintiff's wife, upon opening the package which contained the curtains, discovered that five of the sets were badly torn and otherwise damaged. She thereupon notified the defendant's driver, one Hill, that she could not use the draperies in their damaged condition and requested that he take them to defendant and ascertain whether an adjustment could be made. Shortly after the draperies were returned, she contacted the defendant's claim agent, a Mrs. Hennessey, who informed her that nothing would be done by the defendant in the premises. Consequently, this suit was filed.

The defendant, in substantiation of its defense that the draperies were not injured through its fault, tendered the testimony of J. H. Witte, its cleaner, and J. Randon, who is engaged in the garment cleaning business in New Orleans.

Witte testified that the process used by the defendant is the Zoric dry cleaning system, which is the latest method adopted by the National Association of Dyers and Cleaners. He explained that the system consists of the use of a solvent which is a highly refined grade of carbon tetrachloride; that the machine in which the material is placed works automatically and no human hand touches the goods while they are being cleaned; that the process is so efficient that it is practically impossible for the goods to be injured and that the damage done to the drapes in this case was caused by the deterioration of the material due to age and use. He is unable to say, however, that he handled the particular drapes in question and he made no report of the damage occurring to them while they were in his department.

Mr. Randon stated that he has been in the cleaning business for over 30 years and knows all about the process used by the defendant; that, in his opinion, the damaged condition of the plaintiff's draperies is due to the fact that they were so worn and deteriorated that they were unable to withstand the cleaning process and that their present condition is due to age, use and climatic conditions rather than to the manner employed by the defendant in cleaning them. He admits that he did not know the tensil strength of the fibers of the material at the time the drapes were delivered to the defendant but observes that it is often difficult to ascertain, by a casual inspection of material, whether it can be cleaned without injury.

We would be inclined, in view of the age of the draperies, to accept the deductions of Mr. Witte and Mr. Randon except for the fact that the defendant's agent Barbieries (who received the draperies from Mrs. Gugert) stated in no uncertain terms that he examined them and found that they were in good condition and further, because the circumstances surrounding defendant's conduct, during the time the curtains were in its custody, indicate that it has not acted in the best of faith.

■ It seems clear enough that a laundry should not be held responsible for the damage sustained by materials, which are so badly deteriorated at the time of their delivery that they are unable to withstand an ordinary cleaning process, where it has accepted them in the regular course of business and has not been called upon to inspect their soundness. But, here, it appears that, at the time Mrs. Gugert delivered the curtains to defendant's driver, Barbieries, she requested that he inspect them and that, in accordance with her desires, he examined the texture of the material and found it to be in good condition. Hence, the defendant cannot free itself from responsibility by asserting that whatever damage the goods received during the cleaning process was caused by the inherent weakness of the material. The acceptance of the drapes, after its agent had, upon inspection, determined their sound condition, constituted at least a

tacit representation on its part that they could be successfully cleaned.

Furthermore, the evidence submitted warrants the conclusion that the defendant concealed from the plaintiff (as long as it could) the fact that the drapes had been damaged. They were delivered to it in June and, according to the witness Witte, they were cleaned shortly after they were received. Yet the defendant would have us believe that no one in its employ knew anything about the damage until after plaintiff's wife complained of it. Could it be possible that the employees, who had performed the cleaning work, did not know of the injury? We think not. And if they did know, why was the plaintiff not notified?

Another singular circumstance in the case is found in the testimony of Weiser, defendant's superintendent. He stated that, after the draperies had been cleaned, they were placed in the claim room at defendant's place of business to be held until such time as the delivery of them was requested; that he had no knowledge of the fact of the damage and that when plaintiff's wife telephoned for them during the month of October or November, he had them pressed, delivered them in person and collected the charges due. He admits that it was unusual for him to make deliveries of this sort and we are convinced that there must have been some underlying reason for him to do so in this isolated instance. We might suggest that the truth is that he had knowledge of the damage; that he concealed this information from plaintiff's wife because he believed that defendant was guilty of some fault with respect to the services performed by it and that it was his purpose to collect the charges due before the damage was discovered.

After considering the evidence as a whole, we are not convinced that the defendant has acted as a prudent bailee and we hold that it has failed to establish that the draperies were not damaged through its fault and neglect.

We therefore address our attention to the quantum of damages. At the outset, we eliminate the plaintiff's claim for loss of use of the draperies and the alleged embarrassment caused to him by defendant's breach of contract because he has failed to testify that he suffered damage in any respect. It is true that Mrs. Gugert states that she was humiliated in the presence of her friends because of the absence of the draperies but whatever loss she sustained by reason of defendant's fault is personal to her and cannot be recovered in this suit.

Plaintiff's recovery must therefore be limited to the value of the goods. It is obvious that, since these eight sets of draperies were a composite unit, the loss of five of them rendered the other three sets worthless for the purpose for which they were intended. Hence, he is entitled to be reimbursed for the value of the eight sets as it is certain that new drapes must be purchased by him in order to redecorate the rooms in which they had been hung.

Counsel for plaintiff contends that his client is entitled to the cost price of the draperies and quotes from many cases, as well as from text writers of note, in support of his argument. We have examined these authorities and find that they are inapposite to the facts here presented. Our particular attention has also been directed to the case of Williams v. Gallagher Transfer & Storage Co., Inc., 170 La. 461, 128 So. 277, which counsel claims should be used as our guide in determining the extent of the award. There, the Supreme Court allowed the owner of furniture destroyed by the defendant to recover its replacement cost. But, in so doing, the court remarked that the articles were of such description as to last more than a lifetime. Here, the facts are entirely dissimilar because plaintiff's curtains could be used for only a limited length of time. It would therefore be unreasonable to mulct the defendant for the purchase price or for the replacement cost of the draperies for to do so would be to permit the plaintiff to gain their use for seven years, without cost to him, at the defendant's expense. Such an allowance would be tantamount to the infliction of punitory damages which are not recoverable under the Civil Law.

We believe that the just method of determining the value of used articles, which are not subject to disposal on the open market and which become disintegrated by wear and the lapse of time, is to deduct from their original price a reasonable sum for depreciation.

In the case at bar, the curtains were purchased for $119.00 and had been in use for seven years. There is testimony in the record to the effect that goods of this type deteriorate with rapidity and become worthless after such a long period of time.

Notwithstanding this, it is a fact that these particular drapes were in good condition at the time they were delivered to the defendant and that three of the sets are still capable of being used. It seems plain enough, however, that their value was considerably diminished through wear, age and climatic conditions and that, within a short space, the plaintiff would have been compelled to discard them entirely. While it is always difficult to fix with exactness the amount of depreciation of an article, particularly in the absence of evidence, we feel that, considering the age of the curtains and the amount of use to which they had been subjected, their value at the time of the damage was not more than $35.00.

For the reasons assigned, it is ordered that the judgment appealed from be annulled, avoided and reversed and that there be judgment in favor of plaintiff, Theodore A. Gugert, and against the defendant, New Orleans Independent Laundries, Inc., in the full sum of $35.00 with legal interest thereon from judicial demand until paid, and all costs.

Reversed.

*Rehearing denied June 13, 1938.